The next case is Armand Bessette v. IKO Industries, Inc. Appeal number 20-1986. Attorney Gordon, please introduce yourself for the record and proceed with your argument. Yes, Stephen Gordon for Armand Bessette. I'd just like to reserve one minute for potential rebuttal. Yes, you may have it. Thank you. This case involves a summary judgment motion which involves express warranty and implied warranties and whether or not basically Bessette put forth enough evidence to go to trial on whether there existed the express warranty or the implied warranty substantively in the case. The magistrate agreed during the argument that there was a 30-year warrant, there was a 30-year, basically a 30-year warranty which described the period during which the purchaser would be entitled to some amount of money if the shingles did not perform as warranted. His hang-up was that there had to be a specific itemization of what that warranty covered. At one point he said it had to be written and then he backed off and said it could be oral. Here, the question of the filler provisions of the Uniform Commercial Code take up the issue and complete the question on what was intended and what the 30-year warranty meant. Under the code, what that meant is what Mr. Lappin testified to in his affidavit that when someone says I want a 30-year shingle, they're going to get a shingle that lasts for 30 years and is serviceable for 30 years, that complies with the building code of Massachusetts, which is mandatory. The product has to comply with the code and provide, among other things, fire retardants for that 30-year period. There is no dispute over this fact. There's no dispute that the building code enforced or mandated those provisions. We know that as a matter of, based on Lappin's affidavit, which was unchallenged and which was filed, Lappin says he observed the shingles. When he saw the shingles, they were not fire retardant because they had lost their granules over, I think as you recall, over 80% of the roofing materials, that the roof was no longer fire retardant and that it had to be under the code. So the question is whether or not there was a, taking all the inferences most favorable to beset at the time, whether or not there was an express warranty that the shingles were as they were sold. Taking into account under 303, 1-303, where usage of trade is involved. The question is, what is the practice or method of dealing with, have such regularity in the observance of the trade, custom, or business? And Lappin's testimony is clear that that was the way shingles were purchased in the course of the sale and purchase of the building product. There were two cases, one from Arkansas, one from Texas, which involved essentially the same issue, where the manufacturer warranted, in those cases, the materials for 20 years. And the Texas case, as I recall, the judge applied the same rationale in dismissing the plaintiff's case, as the magistrate did in this case, saying there had to be an explicit statement as to what the warranty covered. And that was rejected under both 303 and under 314, saying that the express warranty only requires that there be an identification or representation regarding the product. And if there was any issue, the question of trade usage would fill in the blanks. The summary judgment in that case was reversed. The same occurred in the Texas case, where the case was directed out after trial, and the question was whether or not the expert in that case, his testimony, filled in the trade usage, and the case should have gone to the jury. In that case, they came up with the same response. Under the code, the question of what the trade usage is, is a matter of fact for a jury to determine, which is beyond the determination at the time under 313 and 303, that the question of the trade usage is, in one case, a mixed question of fact law. In the other cases, they've said it's a question of fact. So that the magistrate acknowledged Layton's testimony and acknowledged his affidavit and said you could accept that, but he rejected it under the very specific. And the code doesn't require that. Four minutes remaining. Four minutes. Allows that to be used. The implied warranty in Massachusetts is, there was an implied warranty in Mass under the Johnson case and under the, oh, Jesus, the Fine case. Under Johnson, that was the case where the Commonwealth had, where the asbestos was installed in the building materials. The SJC came down and clearly said that the product, the asbestos was dangerous, and therefore was a breach of the implied warranty of merchantability because it wasn't fit for the purpose that it was intended. It posed a harm, a potential threat of health, health injury to the users, and said that that was a breach of the implied warranty of merchantability. And that it is a tort claim in essence where the statute of limitations begins to run from the date of discovery and not from the date of sale, as the magistrate found in that case. The Fine case was also a construction case involving materials. And in that case, they found that it was tort in nature as well, referring back to Johnson. In Fine, were the damages sought, they are the same as here? In other words, if I understand it, the harm that's being claimed is purely from the misrepresentation, not from any consequence that followed from it. Is that right, or am I wrong about that? I don't quite understand. The harm here, are you talking about the harm in Fine or the harm in this? I want you to compare the two because I'm wondering, does that matter for purposes of determining whether this is better read as a contract claim or a tort claim? I don't think there's substantially or fundamentally any difference because in Fine, they refer back to Johnson and talk about the fact that it's tort in nature and that the application of the product in that case was such that it posed a harm or risk of harm. And in Bessette's case and in Johnson's case, there was clearly a threat or a very strong potential harm to the safety of the occupants of both structures. In Bessette, without the Fire and Retardancy, anyone in or about the house could potentially have been trapped in a fire, which is the harm, which is exactly what Johnson talked about, the potential of the harm, converting it into a tort. And that was the same concept that Fine talked about, was the potential harm or the harm to the individuals or the structure. So it was beyond a simple contract claim. As it was just beyond under Massachusetts law, the reach of the implied warranty occurs if the product is unreasonably dangerous, which the shingles were when applied to the house and were not fire retardant. And therefore, it becomes a tort claim with three years statute of limitations from date of discovery applies. And in the 93A case in Fine, the 93A case survived, but they hadn't filed within three years of the 93A case. The implied warranty failed because it wasn't within three years, but the 93A case survived because it was within four years of the statute. Just so I follow, if breach of an implied warranty case can be understood as, in some circumstances, contractual in nature, are you saying it's categorically always tortious in nature? No, it can be contractual. So just help me again understand here when the complaint is that it wasn't living up to its promise to be a 30-year shingle, how that type of objection makes it tortious rather than contractual. Because under the evidence that was before the court at the time, the shingles were not fire retardant, number one. Manufacturer, that the shingles be fire retardant, and that they have a certificate. Mr. Gordon, I understood your expert to say that at the time he observed it many years later, that there had been a degradation in the fire retardant capabilities of the shingles. I don't think I read that any assertion that they were not fire retardant at the time of installation. In fact, that's inconsistent with the degradation theory, which is set forth. Just tell me factually what's in the record. What he's saying is that the shingles had to maintain the fire retardancy for the 30 years, because they would be, otherwise it did not conform to the code. That goes back to the question, if, maybe you can just answer this for me. If the breach of the implied warranty is the breach of the promise that it be a 30-year shingle. One way to understand that is that sounds like a contractual version of the claim. If the means of proving the breach was that it wasn't fire retardant for 30 years, your suggestion seems to be that converts it into a tort claim. I think under Johnson it does, because when the asbestos was installed at the time, nobody understood that it was- Yeah, but asbestos is different than a 30-year shingle promise. Well, Johnson- You could be not living up to the 30-year shingle warranty for all kinds of reasons that wouldn't raise the same kind of danger as fire retardancy. Yes, that's true. So some of those, if that was the means of breach, you would suggest would just be contractual in nature. They could be. So asbestos seems different because asbestos is in all cases an unreasonably dangerous product. We don't have that situation here. I think that seems to be the concern. I don't know the answer to that. As you talk about it, under Johnson, it's 1330. They're not fit because the danger of there becoming or loss of fire retardancy is not something an ordinary consumer would have thought- Okay, Mr. Gordon, thank you. We got the point. You have a minute reserved for later. Okay, thank you. Mr. Gordon, at this time, please mute your audio and your video. And Attorney Meltzer, if you could unmute your audio and introduce yourself on the record to begin. Thank you very much. Good morning, members of the panel. May it please the court. My name is Rob Meltzer from the Mountain States Law Group, appearing on behalf of the appellee, IKO Industries Incorporated. The appellee is requesting this panel affirm the grant of summary judgment of this case in its entirety for the reasons stated in Judge Hennessey's report and recommendation dated August 18th, 2020, which commences on page 45 of the record. The grant of summary judgment was based on expressed statutory language of Chapter 106, Section 2 of the Massachusetts Uniform Commercial Code, which applies to the sale of goods, including the IKO roofing shingles in question, which are allegedly installed on the appellant's roof after being bought in 1999. Summary judgment was granted by the trial court as the counts 1 and 2 for implied warranty, that's Section 313 and 314, 314 and 315 of the UCC, based upon a statute of limitations. As the statute of limitations for implied warranties under Section 725, Section 2, at the 40-year time bar clock began running at the time of delivery, that is 1999, was time barred by 2003. Summary judgment was granted at the count 4 for violation of Chapter 93A, based upon the fact that the 93A claim was explicitly stated in the complaint to be derivative of the claim for breach of contract, which is not permitted under Chapter 93A. Summary judgment was granted by the court as the count 3, express warranty, on the grounds that the appellant, having disclaimed the limited warranty tendered by IKO, could not identify an express warranty pursuant to Chapter 100, Section 2, 313, which defines an express warranty as a promise made as part of the negotiation for sale, which would extend into the future time. So let me, Mr. Meltzer, so let me ask you something which is trying to figure out. If I go into a place where I can buy roofing materials, and I look at the 20-year shingles, and I see they cost X dollars per square foot, and then I'm shown the 30-year shingles, which cost X plus N dollars per square foot, and I buy the 30-year shingles, and they're labeled 30-year right on the package. Why, explain to me why that wouldn't be a description of the goods, 30 years, which is made part of the basis of the bargain, and therefore creates warranty. Sure, because, and this was raised by Judge Hennessey in the actual hearing, you wouldn't actually go in and see that. In fact, one of the things that makes this case a little unstrange from our perspective is that, in fact, IKO does provide a limited warranty, which states explicitly what is going to happen in time of future performance. And so, what 2313 suggests is that the warranty that would be provided at the time of sale is part of the actual bargain. It becomes part of the basis of the bargain, as actually stated in the statute. So, what the judge did in the underlying case is he asked Mr. Gordon, on 11 occasions, and we identified them in the brief, he asked him on 11 occasions, what is the representation made by IKO prior to the sale that becomes part of the basis of the bargain. And on the record, it's also very clear that Mr. Bassett, in fact, had no communication from IKO, received no marketing material, had no communications. In fact, there were no representations other than a limited warranty, which he's disclaiming. So, what we have under Section 2313 is we have a reference made by the seller of the shingles, that is the lumberyard, after the sale was already made, so it does not qualify under 2313, that is not a statement made by IKO. So, what we have in the underlying record of this case is 11 instances of the trial court saying, what is the express warranty to satisfy 2313, and on none of those occasions, and nowhere in the record is there identified anything that would qualify as a statement or representation by IKO that would satisfy 2313. So, would Mr. Bassett have a potential express warranty claim against Howe Lumber? I cannot answer that because it does not appear that Howe Lumber is not a manufacturer of these products, a distributor of them distinct from their sales capacity. They're not an agent of IKO. So, whether he's got a claim against them, I would probably almost certainly time barred under the statute of repose in Massachusetts of six years. In our case, what we still don't have is we don't have a representation from IKO that would give rise to a cause of action. And that's where we stand on that, where he could not identify it. What he did identify, and what he spent much of his time in his argument talking about, is what would qualify as implied warranties under 314 and 315, whether or not it's fire retardant, whatever that might be, those claims had to have been brought by 2003. Those are not expressed warranties by definition. And in fact, within section 725, which defines the statute of limitations, it carves out that anything extending to future performance is expressed. So, what he's doing is he's taking what the Lappin affidavit, Judge Hennessey made his point quite clear, what Mr. Lappin believes now, or what the set believed, is not the same as what IKO would have warranted other than limited warranty under 2313. Four minutes remaining. And I think that's something... Four minutes remaining. And I think that what's important to understand about that is that the cases that my brother is referencing, the Texas cases and the Arkansas cases, are not the same by any stretch of the imagination. The Texas case and the Arkansas case, they are cases involving commercial construction. And in both instances, there is a identified representation in the actual record that would answer Judge Hennessey's question. In the case in Texas, it's a question of... They asked certainty, and certainty said it's a 20-year bondable roof. In the case in Arkansas, similarly, it's a commercial project where there is an actual transfer and an acceptance of a written warranty. So, what we have here is not the same as the cases that he has cited from out of state. They're not the same as the Coca-Cola case from Massachusetts. So, this is not a case below which the parties were arguing applicability of law to recognize facts or arguing about the meaning of law. This is a case below in which the appellant was not able to satisfy the court that any promise existed as a matter of fact defined by... Mr. Meltzer, did you separately make a timeliness defense? On which cause of action? The Chapter 93A cause of action. We had made... We made distinct causes of action as to 1, 2, and 3 on statute of limitations. And the court found that on its merits, we never had to get to the statute of limitations because... Was that a no? You didn't make a time-barred... It was an initial derivative. That means you did not make a time-barred argument on the Chapter 93A issue? That's correct. Okay. There wouldn't be any reason to because, by definition, a derivative claim cannot satisfy the underlying... The actual liability of it on the papers themselves. They've admitted it's derivative. And that's what Judge Hennessey pointed out in his findings. We don't get to the question of statute of limitations on that case because there is no separate and distinct claim other than the fact that you derive from it. Let me just ask on that point. I guess there's... Just so I'm clear on it. One way to say that the underlying claim fails is that all the arguments you've just been making, that there never was a warranty in play at all because the only warranty was made by the distributor if there was a warranty of any kind. And that may be correct. But putting that aside for a second, there's a separate potential problem, which is that the claim is time barred because of the discovery rule. And that issue, I think, implicates the question of whether it's right to think of the Chapter 93A case as tortious in nature or not. But do you have a view on that? Am I wrong in thinking about it that way? Yeah, if I respectfully... Yes, I do think you're right, Your Honor. Respectfully, the issue of... There is a discovery rule on this one because on the implied warranty, it's four years from the time of delivery, so the implied warranties are definitely out. In terms of the statute of limitations, our statute of limitations argument is that IKO has a limited warranty with a one-year statute of limitations, which was not met. Equally, you don't get to the issue of 93A because there's an admission that, in fact, there was no communication with IKO until 2016, a demand letter was sent. IKO does have a limited warranty. It is not disputed that IKO offered 100% of the limited warranty, which, in fact, was disclaimed. He turned down the 100% tender. So when you get to the issue of unfair and deceptive trade practices, on the first contact between those parties, here's my claim under your limited warranty, 100% tender was made. He turns it down. There's nothing in there that shows any kind of nefarious conduct by IKO. In fact, that's probably the ultimate of good faith, is that the offer was made. So we're being forced here, on one hand, to defend the statute of limitations. I think you're going back to the merits of this 93A. I was wondering, even if we assume everything in plaintiff's favor with respect to the merits of the Chapter 93A claim, up until the issue of the application of the discovery rule, would he still lose with respect to the discovery rule? And does that turn on whether we think the 93A claim is tortious in nature? No, it doesn't, because this is a contractual case, and the only relationship between the parties is contractual. And so the claim here is that... I guess I just wanted you to answer his argument as to why it's wrong to think of it as contractual because of what he said about the fire retardancy point. May I respond to that? The case of Baystate Spray, it's the case in Massachusetts that made the distinguishing characteristic between 2318, which is tortious breach of warranty, and the contractual. And the distinction is simply that 2318 provides for personal injury or property damage becomes tortious because there's a lack of privity. When you have a case where a party is claiming that there is an express warranty to get him to bargain to buy the shingles, this is entirely contractual. There's no tort element to this at all. You can't have an express... They can't have an express warranty and not have a contract. But this version of the time bar argument, that was not made below. On the 93A? No. I just didn't get your answer. You said no or yes? No, there's no claim on the statute of limitations. Thank you. Is there anything else, counsel? Apparently not. We will hear the one-minute rebuttal from Mr. Gordon. Just real quick. Number one, the magistrate agreed with me that there was a 30-year representation from ICO. He said that in the hearing itself. And in fact, if you look at the record, it's replete with ICO making reference itself to the 30-year warranty. And in answer to the interrogatories, they said 25-year, but there's no dispute that they sold a 30-year shingle, which Laban talked about and said they were selling at the time and went into the trade usage at the time as to what that meant. That's number one. Number two, there was no limited warranty, and there never was a limited warranty, because both two judges ruled on it. They filed a motion to dismiss. It was pointed out that the purported limited warranty was dated after Bassett bought these shingles. It was not in effect at the time. And it was also, as pointed out in the memorandum, there was no evidence that Bassett saw it or purchased those shingles. So those two issues, there was no limited warranty. The 30-year was clearly a representation made by ICO. There was never, and again, Bassett did not provide or did not submit a limited warranty claim. He filled out a form, which was an inquiry form by ICO, and when they dealt with it, he did not say limited warranty. Okay, Mr. Gordon, thank you. Thank you. That concludes argument in this case. Attorney Gordon and Attorney Meltzer should disconnect from the hearing at this time.